Keauhulihia *et al. v.* Hiram Puahiki.

## SUPREME COURT—IN BANCO.

## APRIL TERM, 1880—IN EQUITY.

*Harris, C. J., and McCully, J.*

## KEAUHULIHIA ET AL. *vs.* HIRAM PUAHIKI.

### ON APPEAL.

WHERE THE PLAINTIFFS conveyed to the defendant half the real estate left by his wife, because they supposed he was entitled to inherit it as her husband, and by law he was not so entitled, and the plaintiffs were ;

HELD, that the plaintiffs are entitled to relief against the mistake, but that a lease executed by defendant after the conveyance to him, to lessees without notice of plaintiffs' rights, shall stand, they attorning to the plaintiffs.

OPINION OF CHIEF JUSTICE HARRIS APPEALED FROM.

I do not see any evidence of fraud between these parties, and the plaintiffs, if they recover at all, must recover on the ground that the whole proceedings being a mistake are void from the beginning. It appears from all the testimony and from the bill that Meaai, a woman, who was the wife of Puahiki, the defendant in this case, died in 1868, seized of the property in question, and that the plaintiffs in this case are brother and sister of Meaai.

It is contended on the part of the defendant that the law of descent, even previous to 1872, entitles the husband to one-half of the estate, and the decision of the Court in the matter of the estate of Napua Zupplein Kaluahine, deceased, is not conclusive in this case (see 3d Haw. Rep., 327), because it was an *obiter dictum* and the text of the decision does not support the syllabus. But on reading the case over I do not find

that it is an *obiter dictum*.  For the husband was claiming on two grounds—first, by virtue of the Marriage Act; second, by virtue of the statute of descent.  Now, if the decision of the Court should be that his claim by reason of his marriage was good, he would be entitled to all the personalty and none of the realty.  See Civil Code, Section 1286, which states that "provided that in case his wife shall first die, the husband legally married as aforesaid, shall cease to have control over the immovable and fixed property of his wife, and the same shall immediately descend to her heirs as if she had died sole, unless there happen to be legitimate issue of the marriage within the age of the legal majority."  But if his claim should be under the law of descent, then he would be entitled to one-half the realty and one-half the personalty, so that it became necessary for the Court to decide whether the husband must take under the Marriage Act or that of descent.  For, say they, "he cannot take under both provisions," because they are incompatible; and they further decide that he must take under the Marriage Act and not under the law of descent as it then stood; for, say they, "There is only one condition under which the husband can inherit the property of the wife, and that is where she dies intestate and leaves no kindred but her husband, and in that case he shall inherit all her estate."

This decision, in view of the second and third subdivisions of the 1448th Section of the Civil Code, and of the 1286th Section was clearly right, was entirely in point in that case, and was conclusive upon the rights of this defendant up to the time of the execution of the partition deed in December, 1879, which it is the object of this proceeding to set aside; and the question is whether the deed to the defendant by the plaintiff ought to stand.

It is stated first, that it ought to stand because that it is a mere carrying out of a previous arrangement made in 1864 verbally; or to state the defendant's position in his own words, because "it appears that the property set off to Puahiki (by

Keauhulihia *et al. v.* Hiram Puahiki.

the deed) was the same as that set off in 1864 as his share, and held by him until the partition."

I do not see the force of that position, for in the first place the wife did not die until 1868, and secondly, if they did make a verbal partition, it appears to have been done in this way. See testimony of H. Puahiki, page 13. "My wife first divided this land into two portions by word of mouth, one-half to our parents and the other half to myself." This amounted to nothing more nor less than that they two (the husband and wife) permitted the parents to occupy one-half the land, and apparently from good cause, since Kakio, who is the parent alluded to, is the same person who is mentioned in Kamakai's will, devising this land in the following words: "Ke hoolilo aku nei au i o'u mau kuleana ia Meaai a ke hoolilo aku nei au ia Kakio i hope no Meaai." Thus constituting Kakio a "hope" for Meaai (whatever idea he may have attached to "hope" whether factor, agent, trustee, attorney or otherwise).

Thus it will be seen that from the date of his wife's death the defendant had merely a permissive occupancy by her heirs, which were her brother and sister, having no rights of his own, though by the after events, it appears that they thought he had; and perhaps he thought so himself. The law of 1872, which enacted that under such circumstances as those under contemplation, the husband would be heir to one-half of the wife's property, had no effect on his position, since the rights of the plaintiffs to the property attached the hour when the defendant's wife died.

At the date of making the deed in question, the plaintiffs' right to the piece of land set off to defendant was indisputable, since whatever doubt may have existed on the statute of descent had been set at rest by an authoritative decision of this Court in the case of Napua Zupplein Kaluahine, above quoted. The plaintiffs "in ignorance of a plain and settled principle of law were induced to give up their indisputable

36

property," that is to give something for nothing; and it is an unquestionable doctrine that where a party so acts, "A Court of Equity will relieve him from the effect of his mistake." See 1 Story's Equity Juris., Sections 121, 122. If the division had occurred previous to the decision in the estate of Napua Zupplein Kaluahine, above cited, the position of the defendant would have been better, for it might have been considered that there was a doubt how the statute of descent would have been construed.

It follows, therefore, that the deed of the plaintiffs to the defendant must be cancelled, and I do so adjudge, and will sign an order to that effect when presented.

But there is another matter which arose during the hearing. It appears that subsequent to the making of the deed (the subject of this controversy), Puahiki executed a lease in favor of Messrs. Widemann & Richardson. They should have been impleaded if it were known to the plaintiffs, or they should have sought to make themselves party to this action, if the action were known to them, so that all the questions arising out of these conveyances might be settled at once, for it is a well-known principle of Equity Courts that when they have once had jurisdiction of a matter they will proceed to settle all matters pertaining to it, to prevent a multiplicity of actions. On this principle, though I may be proceeding a little out of the record as made by the bill and answer, yet as the matter was raised by the evidence and reasoned upon somewhat at the hearing, I will take occasion to say that inasmuch as the plaintiffs had executed voluntarily the deed to Puahiki, Puahiki's lease to Widemann & Richardson must be held to be binding on these plaintiffs, the said lessees paying the rent to the plaintiffs.

Castle & Hatch for complainants.

Preston & Brown for respondents.

Honolulu, March 12, 1880.